STATE OF WEST VIRGINIA *v.* JOE WESTFALL

(No. 9507)

Submitted February 1, 1944. Decided February 15, 1944.

*Wm. S. Ryan,* for plaintiff in error.

Fox, Judge:

The defendant complains of the judgment of the Circuit Court of Roane County imposing upon him a fine and imprisonment, based upon the verdict of a jury finding him guilty of contributing to the delinquency of Dorothy Nichols, a female child of the age of fifteen years. A motion to set aside the verdict was overruled by the court, and judgment entered thereon as aforesaid, and to such action of the court we awarded this writ of error.

The sufficiency of the indictment is raised upon the motion to set aside the verdict, it being contended that the indictment is not sufficient, for the reason that it does not define any offense or act committed by the defendant, and does not sufficiently charge him with doing any unlawful act. We think the indictment is sufficient. It is based upon Section 7 of Article 7, Chapter 1, Acts of the Legislature, First Extraordinary Session, 1936, (Michie's Code, 49-7-7) as amended by Chapter 73, Acts of the Legislature, 1941. That section, as amended, provides that "A person who by any act or omission contributes to, encourages or tends to cause the delinquency or neglect of any child, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not to exceed five hundred dollars, or imprisoned in the county jail for a period not exceeding one year, or both." The indictment charges that the defendant "did unlawfully cause, encourage and contribute to the delinquency of Dorothy Nichols, an infant child as such term with reference to children is defined in the statutes of the State of West Virginia, she, the said Dorothy Nichols, being then and there a child under the age of eighteen years, to-wit, of the age of fifteen years, by enticing, encouraging, inviting and soliciting the said Dorothy Nichols to go to bed and she did go to bed with one Russell Zinn in the home of the said Joe Westfall, in said county, all to the corruption of the morals of said Dorothy Nichols, whereby she became a delinquent child by reason of said

acts and conduct of the said Joe Westfall, * * *." The term "delinquent child" is defined in Section 4 of Article 1 of Chapter 73 of the Acts of the Legislature, 1941, and the allegations of the indictment, with respect to delinquency, come within such definition. While technical objections to the indictment may be pointed out, we do not think they are of such a nature as to warrant us in holding it insufficient. It cannot be said that it fails to advise the defendant of the nature of the charge he was called upon to defend, and, this being true, minor defects are not prejudicial.

The evidence clearly establishes the delinquency of Dorothy Nichols, and that the acts and conduct which constitute such delinquency occurred at the home of the defendant; but we do not think such evidence sufficient to establish that the defendant either encouraged the said Dorothy Nichols to engage in such delinquency, or that he knowingly contributed thereto.

The defendant, with his wife, lived in a house near the town of Spencer. On the occasion to which the testimony relates, the Westfall home was occupied by the defendant and his wife, his son, Harley Westfall, and a girl who had been living at the Westfall home for about a year, and who, a short time afterward, married Harley Westfall. Early in the evening of November 15, 1942, Dorothy Nichols, accompanied by one Russell Zinn, came to the home of Westfall and remained there a short time. They then left the Westfall home, but soon returned thereto. They then went to a room somewhat isolated from the rooms occupied by the defendant and by Harley Westfall. Some time after midnight a deputy sheriff, who had a warrant for Russell Zinn, and who was accompanied by two other persons deputized for the occasion, came to the Westfall home in search of Zinn. According to the statements of two of these officers, the third being unavailable, they found Russell Zinn and Dorothy Nichols in bed together and unclothed, although Zinn and Nichols both deny that they were unclothed, saying that they were

merely lying on the bed together, fully clothed, except that Zinn had removed his shoes. In these circumstances, if the defendant knew of the presence in his home of the delinquent girl and her companion, the verdict of the jury would be fully justified; but defendant and his wife both testified that the defendant was in a room separated by an intervening room from that occupied by the delinquent girl and her companion. Westfall testifies that he was in bed with what he thought was a broken back; that he did not leave his room during the night; and that he did not know that either Russell Zinn or Dorothy Nichols was in his home at any time. In this statement he is corroborated by his wife. He is also corroborated by the statements of Harley Westfall and his wife to the effect that, so far as they knew, Joe Westfall had no knowledge of the presence of the delinquents in the home that night. Both Russell Zinn and Dorothy Nichols made the same statement. There is, therefore, not only a total failure to establish by any direct proof of the one essential fact, namely, knowledge on the part of Joe Westfall that these people were engaging in this conduct in his home, but the positive evidence that he did not have such knowledge. The jury could only have reached its verdict by inferences based upon the general surroundings shown by the evidence to exist. A defendant accused of crime may only be convicted upon evidence which establishes the crime beyond all reasonable doubt, and, while circumstantial evidence may establish a crime, we do not think the circumstances of this case are strong enough to warrant the verdict returned by the jury. The only testimony which in any way tends to establish the contention that the defendant knew of the presence of this delinquent at his home on that occasion, is the alleged statement of Dorothy Nichols, said to have been made in the office of the prosecuting attorney on the day following the alleged offense which was, in substance, that when she and Zinn went to the defendant's home on the evening in question, he told them that there was a bed in a room in his home

which they could use whenever they wanted to. Dorothy Nichols denies that she made any such statement, but at most it only goes to contradict her statement made at the trial, and in which she is corroborated by Russell Zinn, that, so far as she knew, the defendant did not know of her presence in his home on the night in question. Taking the evidence as a whole, and giving to the defendant, as we must, the benefit of all reasonable doubt, we do not think the verdict of the jury was warranted, and that the same should have been set aside by the trial court.

The judgment of the Circuit Court of Roane County is reversed, the verdict of the jury set aside, and a new trial awarded.

*Judgment reversed; verdict set aside;*
*new trial awarded.*